JOURNAL ENTRY AND OPINION
{para; 1} Defendant Woodrow Wilson appeals from his convictions for rape and kidnapping. For the reasons set forth below, we affirm.
{para; 2} On March 23, 2006, defendant was indicted for two counts of rape and one count of kidnapping with a sexual motivation specification in connection with an incident which occurred at the Euclid Motel on June 15, 2003. Defendant pled not guilty and the matter proceeded to a bench trial on October 18, 2006. *Page 3 
 {para; 3} The state presented the testimony of the alleged victim, S.S.,[1] Paul David Rosier, Kimberly Daugherty, Cleveland Police Officer Michael Kovach, and emergency room nurse Mary McLaughlin.
{para; 4} S.S. testified that in 2003, her partner, Kimberly Daugherty, had a drug problem, would trade her car for drugs and would sometimes disappear for days. On June 15, 2003, Daugherty did not return home and S.S. and Daugherty's brother, Rosier, went to look for her. They drove in the area of East 185th Street and Euclid where Daugherty was known to purchase drugs, and stopped defendant to ask him if he had seen Daugherty. Defendant, who knew Daugherty, directed them to the Euclid Motel. While en route, S.S. was stopped for running a red light and for having expired plates.
{para; 5} The group observed Daugherty's car at the Euclid Motel. They began knocking on doors. According to S.S., the management of the motel and an off duty police officer ordered them out of the area and would not permit her to look for her friend. She and defendant then decided to get a room in order to watch for Daugherty's return to her car. Rosier did not join them because he did not have identification which was needed in order to enter.
{para; 6} S.S. watched for Daugherty and defendant left to buy crack cocaine. When he returned, he smoked the crack and offered some to S.S. who declined. Defendant then began to watch a pornographic movie and abruptly attacked S.S., *Page 4 
raping her vaginally and anally. The woman reportedly told defendant that she was gay but he continued the attack.
{para; 7} S.S. did not report the attack to the off duty officer but instead returned to Rosier who was waiting in the vehicle. They drove to Daugherty's mother's house then S.S. called her counselor, who suggested that she go to the hospital. S.S. went to Richmond Hospital where she was examined by nurse Mary McLaughlin. A rape kit of evidence was collected. It is undisputed that defendant's DNA is present within vaginal swabs obtained during the examination.
{para; 8} On cross-examination, S.S. admitted that she was on Oxycontin, Xanax, and Prozac at the time of the incident but she denied abusing these drugs.
{para; 9} McLaughlin testified that the medical records from the incident did not indicate that S.S. was intoxicated and protocols require such notation where it is applicable. She also testified that she photographed S.S.'s arm because of an injury, but the injury was not apparent from the photograph due to poor camera quality. She also noted that S.S. appeared anxious, and told McLaughlin that she was in shock and could not believe what had just happened.
{para; 10} Rosier testified that he and S.S. looked for Daugherty in the same location where they found her in a previous incident. They approached defendant and defendant directed them to the Euclid Motel. He and S.S. went in and defendant came out alone later. Police officers told Rosier to move his vehicle but he could not do so because he did not have the keys. S.S. returned to Rosier's vehicle and they drove to his mother's home. En route, she informed Rosier that she *Page 5 
had been raped.
{para; 11} On cross-examination, Rosier stated that S.S. and defendant went to an automated bank teller, and that she gave defendant money which he used to purchase crack cocaine. According to Rosier, S.S. had prescription medicine which she abused.
{para; 12} Kimberly Daugherty testified that on June 15, 2003 she had been using drugs with defendant. She allowed her drug dealer to use her car in exchange for crack. Defendant wanted to have sex with her but she said no. Later, she got a ride to her mother's house and learned that S.S. had been assaulted. She could not identify defendant from a photo array, however.
{para; 13} Daugherty admitted on cross-examination that she used drugs with defendant several weeks after learning that S.S. had been assaulted.
{para; 14} Officer Kovach testified that, during the traffic stop of S.S.'s vehicle, the police were given an incorrect name, date of birth, and social security number for defendant. Later, the DNA evidence obtained in this matter was screened through an index system and the police linked the matter to defendant.
{para; 15} The officer testified on cross-examination that S.S. said nothing of a bank machine stop or her drug use when she made her police report.
{para; 16} Defendant elected to present evidence. He testified on his own behalf and also presented testimony from his mother, Eleanora Wilson.
{para; 17} According to defendant, S.S. and Rosier stopped him and indicated that they were looking for their sister. He joined them but denied directing them to the *Page 6 
Euclid Motel. Police stopped the car but defendant did not know how they obtained incorrect information concerning his identity. They went to the Euclid Motel and S.S. withdrew money from a bank machine to pay for the room then gave him $20 for crack. S.S. looked out the window to watch for Daugherty and defendant turned on the television. A pornographic movie was on. Defendant stated that he does not like pornography but S.S. had no objections, and he was not actually watching it.
{para; 18} According to defendant, he and S.S. smoked crack cocaine. S.S. then told him that although she is gay, it is her fantasy to be with a black man, and she asked him to have sex with her. Defendant agreed and S.S. showered and they engaged in consensual vaginal intercourse. Afterward, he walked her back to Rosier's car and they exchanged numbers. She then told him to stay in the room because it was paid for through the following afternoon.
{para; 19} Defendant further testified that, after this case was pending, Daugherty and S.S. came to him looking for crack. They all smoked crack together and the women undressed and had sex in front of him. He recorded the incident on his cell phone but could no longer use his phone since the bill was unpaid. He further claimed that the women did not know that he was the man with whom S.S. had been in the motel room and they asked if he knew Woodrow Wilson, because Wilson had raped S.S. Defendant denied being Wilson.
{para; 20} Defendant admitted that he has prior convictions for drug abuse. He stated that S.S. motioned for him to come over to her at the courthouse shortly before trial. She said that she knew that he did not rape her and that she was sorry, *Page 7 
and he then gave her his telephone number.
{para; 21} Defendant's mother testified that after S.S. left the courtroom a few days earlier, she winked at defendant and motioned for him to come over to her. Mrs. Wilson did not hear their discussion, however.
{para; 22} Defendant was subsequently convicted of one count of rape and the kidnapping charge. The trial court then sentenced defendant to concurrent terms of three years imprisonment plus five years of post-release control sanctions. Defendant now appeals and assigns two errors for our review.
{para; 23} Defendant's first assignment of error states:
{para; 24} "The trial court erred in denying defendant-appellant's Crim.R. 29(A) motion for acquittal on the charges of rape and kidnapping."
{para; 25} Crim.R. 29 provides in pertinent part:
{para; 26} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve a ruling on a motion for judgment of acquittal made at the close of the state's case."
{para; 27} Upon review of a ruling on Crim.R. 29(A), this court construes the evidence in a light most favorable to the state. An entry denying the motion is proper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable *Page 8 
doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, citing State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
{para; 28} The elements of rape are set forth in R.C. 2907.02(A)(2) as follows:
{para; 29} "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
{para; 30} "Sexual conduct" means, in pertinent part, "the insertion, however slight, of any part of the body * * * cavity of another." R.C.2907.01(A).
{para; 31} The essential elements of kidnapping are set forth in R.C.2905.01(A)(4):
{para; 32} "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
{para; 33} "* * *
{para; 34} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will[.]"
{para; 35} In this matter, the state's evidence indicated that defendant led S.S. to the Euclid Motel, and waited with her for Daugherty. He watched a pornographic movie and smoked crack then attacked S.S., and raped her. This evidence, if believed, establishes that defendant forcibly restrained the woman of her liberty for purposes of engaging in sexual activity.
{para; 36} The trial court did not err in denying the motion for acquittal as to these charges. This assignment of error is without merit. *Page 9 
 {para; 37} Defendant's second assignment of error states:
{para; 38} "The trial court erred in finding defendant-appellant guilty of rape and kidnapping because the convictions are against the manifest weight of the evidence."
{para; 39} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a finder of fact which has "lost its way." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court explained:
{para; 40} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [fact-finder] that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
{para; 41} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should *Page 10 
be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
{para; 42} The reviewing court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the fact-finder to consider. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
{para; 43} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court considers the following non-exhaustive list of factors:
 1) Knowledge that even a reviewing court is not required to accept the incredible as true;
 2) Whether evidence is uncontradicted;
 3) Whether a witness was impeached;
 4) Attention to what was not proved;
 5) The certainty of the evidence;
 6) The reliability of the evidence;
 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary. See State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926; State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443. *Page 11 
 {para; 44} In this matter, the state's evidence indicated that there was no prior relationship between S.S. and defendant, that S.S. approached defendant to find Daugherty and was led to the motel. The evidence further demonstrated that police stopped them en route and that the police ultimately obtained incorrect information concerning defendant's identity.
{para; 45} S.S. testified that defendant smoked crack and watched pornography then attacked her. She left and told Rosier, then contacted her counselor and went to the hospital where DNA evidence was collected.
{para; 46} Defendant denied being in S.S.'s car, even though the evidence demonstrated that he was questioned during the traffic stop. He denied directing them to the Euclid Motel in search of Kimberly, then later admitted doing so. He stated that S.S. was jittery and looked out the window for Daugherty but the pornographic movie made her want to have sex with him. He claimed that he smoked crack with the women a few months before trial but admitted to giving S.S. his telephone number outside the courtroom a few days earlier. From the foregoing, we cannot conclude that the convictions are against the manifest weight of the evidence. The state's witnesses were certain, logical and supported by other evidence. Defendant's testimony was illogical, vague in numerous points and riddled with inconsistencies and changes. The court did not lose its way in convicting defendant of the offenses.
{para; 47} This assignment of error is without merit.
 Affirmed. *Page 12 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR.
[1] It is the policy of this court to omit from its opinions the names of alleged victims of sexual offenses. *Page 1